[Civ. No. 4317. Fourth Dist. Mar. 28, 1952.]

W. D. JOUGHIN et al., Plaintiffs, v. HARRY D. WEST et al., Appellants; ETHEL JOUGHIN, Cross-Defendant and Respondent.

Calvin H. Conron, Jr., for Appellants.

Deadrich, Gill & Bates and W. E. James for Cross-Defendant and Respondent.

BARNARD, P. J.—This action involves the rights of the parties with respect to the use of a small pipeline. The Joughins and the Wests are adjoining landowners, each owning several sections of grazing land, a part of the land of each being riparian to a small creek. Under some oral agreement the defendants, in 1941, constructed diversion works and installed the pipeline for the purpose of taking water from this creek to be used in watering stock on certain lands outside of that watershed. This pipeline started on section 4, and went across section 5 belonging to the plaintiffs, across section 6 in which both parties had land, across section 1 owned by the plaintiffs, to section 2 owned by the defendants, and thence to section 11 which was leased by the defendants and used in connection with section 2 which had long been known as the "Brown Place." The defendants installed a trough on their land in section 6, some troughs on sections 1 and 2 and a trough on section 11. Water in the various troughs was controlled by float valves, the flow being governed by the number of cattle watered and not by the size of the pipeline.

A dispute over the rights of the parties in the use of this pipeline resulted in this action. So far as material here, the complaint described the course and flow of the stream and the construction of the pipeline with the location of the troughs, and alleged an oral agreement that the defendants

might divert surplus water from the creek; that the water diverted should be shared equally with the plaintiffs; that water should be supplied to two troughs on section 1 at all times when water was flowing in the pipeline; and that the defendants would enter into a written agreement setting forth the oral understanding. It was then alleged that the defendants were increasing their use of the water and refused to restrict such use to that prevailing at the time of the agreement; that they refused to execute a written agreement; and that the plaintiffs had elected to cancel and terminate the oral permission to take water through the pipeline. The prayer was that plaintiffs' rights to the flow of the stream be quieted; that the defendants be restrained from diverting the flow of the stream by means of the pipeline or otherwise; that they be required to remove the pipeline from plaintiffs' lands; and for other and further equitable relief. The answer, among other things, alleged that the pipeline had been built in reliance upon a promise that it might be used to supply water to the troughs mentioned in the complaint, and that the plaintiffs are estopped to deny such use. The defendants also filed a cross-complaint claiming an easement across plaintiffs' lands in sections 4, 5, 6 and 1, with the right to use water to supply troughs ''along said pipe line,'' subject to plaintiffs' right to water for two troughs on their land when water is flowing through said line.

Mr. Joughin died before the trial of the action. Among other things, the court found that in 1941, the parties had orally agreed as follows: 1. That the Wests could construct a pipeline and divert water from this creek to their land in section 2, and to section 11, so long as the Wests continued as tenants of said section 11. 2. That the plaintiffs would have a prior right to such diverted water for use at a location on the south half of section 1 and at another location on the north half of section 1. 3. That the Wests would be entitled to reasonably use the diverted water on their Brown Place, based on the purposes to which the premises were then devoted. 4. That the Wests assumed no obligation to maintain or service the pipeline. 5. That the diversion of water through such pipeline would be subject to the riparian uses of both parties, only surplus water to be diverted. It was further found that sections 2 and 11 were not in the watershed of this creek, and that water therefrom had not been previously used on those sections; that in 1941, the defendants installed

this pipeline across sections 5 and 6, and running to a trough on the south half of section 1 and two troughs on the north side of section 1, thence to three troughs on section 2, and thence to a trough on section 11; that since 1941, water from this pipeline has been used in three troughs belonging to the plaintiffs in section 1, and four troughs on defendants' lands in sections 2 and 11; that this use was permissive and pursuant to the agreement; that in addition to such permissive use the defendants also installed and used a trough on section 6 which was not permissive and was adverse to plaintiffs' riparian rights; and that the defendants have no right to use such water on section 6 or at any place except on sections 2 and 11, subject to their continued tenancy of section 11. It was further found that the defendants owned this pipeline with an easement over plaintiffs' lands in sections 5, 6 and 1, with a right to take and use water thus diverted to supply four troughs on sections 2 and 11, subject to the conditions prevailing when the system was installed; that the defendants' right to take such water to section 11 shall continue only so long as they remain tenants thereof; that the plaintiffs are entitled to water for one trough on the south side of section 1 and to two troughs on the north part of section 1, prior to any other use of the pipeline; and that any diversion and use through the pipeline is not to interfere with the riparian rights of the parties. A judgment was entered to the same effect, awarding these rights to the respective parties and restraining the defendants from diverting water through this pipeline for use in the trough on section 6, or for any other use except on sections 2 and 11, as provided for in the findings.

The defendants have appealed from the judgment, contending that there is a variance between the findings and the pleadings, that there are findings on issues not raised by the pleadings, and that some of the findings are not supported by the evidence. It is argued that the entire system was installed in reliance upon the oral agreement, that no objection was made for more than two years, and that the evidence fails to show that the appellants ever extended their use of the pipeline. It is urged that the judgment is erroneous (1) in restraining the appellants from using this water on section 6, or anywhere except on sections 2 and 11; (2) in awarding the respondent three troughs on section 1 instead of two; and (3) in confining appellants' use of water on section 11 to the period of their tenancy of that land.

This pipeline was constructed pursuant to an oral agreement, and the terms of that agreement are controlling as to its use. With respect to the making of this agreement, the respondent testified that Mr. West told them that he wanted to lay the pipeline from the springs down to the Brown Place (section 2), and if they would allow it he would go 50-50 on the water and give them water for "our lower field" (section 1); that he said he "wanted the water just to be used on the Brown place" and wanted to start work the next morning; and that he said he would sign an agreement to this effect whenever they desired. Mr. West testified that at this conversation "I asked Mr. Joughin if I could run a line down the roadway, down to my lower place and I told him in consideration of running the line down there I would give him one trough of water on the north side of the road in the lower pasture. That was the proposition"; that Mr. Joughin said this would be all right; and that he put in a trough for him. While the evidence is meager it supports the court's finding as to the terms of the agreement, with one exception hereafter noted.

The appellants contend that no issue was raised as to whether their use of a trough on section 6 was adverse rather than permissive; that there is a variance between the complaint and the findings in that the complaint alleged that a trough was installed on section 6, and it was found in Finding IX that this trough was installed in reliance upon the agreement, while Finding X finds that the agreement did not permit a trough on section 6; and that the evidence does not support the finding that the appellants have no right to the use of a trough on section 6.

While the complaint alleged that a trough was installed on section 6, and Finding IX finds that certain installations were made in reliance upon the agreement, that finding does not mention any trough on section 6. No variance appears in this respect. ██ The pleadings raised an issue as to the terms of the agreement, and the controlling question is as to whether the evidence supports Finding X. There is no evidence that anything was said by either party relating to the use of a trough on section 6, and the existence of a right thereto depends upon the terms of the agreement. Mr. West testified that he asked for permission to install the pipeline for the purpose of taking water down to his lower place, which would be section 2 (and possibly section 11). The respondent

testified to the same effect, and that Mr. West stated that he wanted the water for use only on the "Brown Place." The appellant sought and obtained permission to divert this water for a particular purpose and, in the absence of any further agreement, the permission granted was limited to that purpose. The cross-complaint also presented an issue as to appellants' right to use troughs anywhere along the pipeline, and the evidence supports the findings with respect to such a right.

Error is next assigned in that the court awarded the respondent the use of three troughs on section 1 instead of two. One paragraph of the complaint alleged that the oral agreement provided for two troughs for plaintiffs' use on section 1, but did not specify their location. In another paragraph it alleged that water was taken through this pipeline to two troughs for the plaintiffs' use on the north half of section 1, and also that "by virtue of an agreement with the plaintiff Ethel Joughin" the defendants maintained another trough on plaintiffs' land in the south half of section 1. The court found that the agreement provided that the Wests would supply water to the plaintiffs at a location on the south half of section 1 and at another location on the north half of section 1, and also found that pursuant to the original agreement diverted water had been supplied to and used by the plaintiffs in three troughs on section 1.

A witness for the respondent testified that there were two troughs on the north half of section 1. Mr. West testified that since the installation of the pipeline water has been continuously furnished and used in the Joughin "troughs." The only evidence of a trough on the south half of section 1 is that of Mr. West, who testified that he had a trough there and was using a part of the south half of section 1 under an agreement with the Joughins for the exchange of the use of certain properties. This is confirmed by the allegations of the complaint that the plaintiffs were to have two troughs on section 1, that water was furnished to them for two troughs on the north half of section 1, and that a trough was maintained by the defendants on the south half of section 1 by virtue of some agreement. Apparently, this was a separate and distinct agreement and the rights of the parties with respect to the trough on the south half of section 1 would be governed thereby. While the evidence justifies the inference that the original agreement called for two troughs for the plaintiffs' use on the north half of section 1 there is no

evidence that it called for another trough for their use on the south half of section 1, or that they were entitled to three troughs on section 1. Those portions of the findings are without evidentiary support, and the judgment should be modified accordingly.

It is next contended that no issue was raised in the pleadings with respect to limiting, to the duration of their tenancy, the appellants' use of this water on section 11. An issue was raised as to the terms and extent of the oral agreement. As the court found, the agreement was that the Wests should be entitled to take this water for use on the "Brown Place" for the purposes for which those premises were then used. The Wests were then leasing land in section 11, which they were then using in connection with the old "Brown Place" which they owned. Mr. West testified that the agreement was that he could take the water "down to my lower place." The court apparently viewed the, agreement as inferentially including section 11 as a part of the "Brown Place" so long as the existing tenancy condition existed. This portion of the findings and judgment is more favorable to the appellants than otherwise, and no reversible error appears in this connection.

It is further contended that the appellants have a right to appropriate any excess waters of this creek which does not interfere with the respondent's riparian rights, and that the judgment improperly forecloses them from exercising such a right in the future. The only thing involved in this action was the diversion of water through this pipeline. Any such diversion was contractual and not appropriative, and no rights not resting on that agreement were foreclosed by the judgment.

It is unnecessary to consider the other points raised. Objections were promptly made, this action was timely brought, and the appellants acquired no rights by estoppel or adverse use.

Paragraph 1c of the judgment is modified by striking therefrom the words "in one trough south of the County Road and," so that said paragraph shall then read: "That the Plaintiff and Cross-Defendant is entitled to use a reasonable amount of water for stock watering purposes in two troughs north of the County Road on their said Section 1, Township 27 South, Range 29 East, M. D. B. & M., at or near the location

of the troughs now on said land, as a priority to any other use through said pipeline." As so modified, the judgment is affirmed, each party to pay his own costs.

Griffin, J., and Mussell, J., concurred.

A petition for a rehearing was denied April 24, 1952.